UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:22-cv-00012-FDW

| | |
|---|---|
| JOHN RICE, | ) |
| Claimant, | ) |
| vs. | ) |
| | ) ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

THIS MATTER is before the Court on Claimant John Rice's Motion for Summary Judgment, (Doc. No. 7–1); Defendant Acting Commissioner of Social Security Kilolo Kijakazi's (the "Commissioner") Motion for Summary Judgment, (Doc. No. 8); and Claimant's Reply, (Doc. No. 10). Claimant, through counsel, seeks judicial review of an unfavorable administrative decision denying his application for a period of disability and Disability Insurance Benefits. The motions are fully briefed and are now ripe for review. For the reasons set forth below, the Court GRANTS Claimant's Motion for Summary Judgment and DENIES the Commissioner's Motion for Summary Judgment.

## I. BACKGROUND

On January 31, 2018, Claimant filed an application for a period of disability and Disability Insurance Benefits ("DIB"), with an alleged onset date of December 31, 2017. (Doc. No. 9, p. 7). On February 27, 2020, Claimant testified at a hearing before the ALJ. Id. Subsequently, on April 13, 2020, the Commissioner denied Claimant's initial application. Id. After accepting review of the ALJ's initial decision, on January 4, 2021, the Appeals Council vacated the ALJ's denial and

1

remanded the decision back to the ALJ to address Claimant's neck impairment and associated headaches. Id. On June 23, 2021, Claimant attended a second hearing with the ALJ. Id. at 8. On July 9, 2021, the ALJ again issued an unfavorable decision. Id. The ALJ concluded Claimant was not disabled since the alleged onset date. (Doc. No. 6–3, p. 40). On December 2, 2021, the Appeals Council denied Claimant's request for a second review, making the ALJ's denial decision the final decision of the Commissioner. (Doc. No. 9, p. 8).

In step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (Doc. No. 6–3, p. 29). At step two, the ALJ found Claimant had severe impairments under 20 C.F.R § 416.920(c) (2023), including chronic liver disease and cirrhosis, hepatitis, obesity, hearing loss, and cervical degenerative disc disease. Id. at 30. Evaluating step three, the ALJ determined Claimant had no limitations in "understanding, remembering, or applying information", or "interacting with others". Id. at 31. Additionally, the ALJ found Claimant had "mild limitations" in "concentrating, persisting, or maintaining pace", and in "adapting or managing oneself." Id. at 32. The ALJ then concluded none of these impairments, nor any combination of impairments, medically equaled one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1. Id. at 33.

Before addressing step four, the ALJ established Claimant had the Residual Functional Capacity ("RFC") as follows:

> through the date last insured, the [C]laimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except he should avoid climbing ladders, ropes, or scaffolds, and he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He is able to perform work requiring only a moderate hearing level.

Id. at 32.

In evaluating step four, the ALJ determined Claimant was capable of performing past relevant work ("PRW") as a project manager. Id. at 39. In reaching this conclusion, the ALJ considered the testimony of the vocational expert ("VE"), who referred to Claimant's PRW as "a gamut of the construction world." Id. at 75–77. Specifically, the ALJ discussed Claimant's PRW as a carpenter, construction estimator, and project manager. Id. at 39. The ALJ determined Claimant is unable to perform his past work as a carpenter because "the exertional and nonexertional requirements of this work exceed the claimant's" RFC. Id. Next, the ALJ noted the VE testified that an individual with Claimant's RFC could perform past work as a project manager and an estimator. Id. at 40. However, the ALJ determined Claimant's past work as an estimator did not constitute substantial gainful activity because the record did not show any earnings for work related to that occupation. Id. Accordingly, the ALJ considered only Claimant's past work as a project manager in concluding Claimant was capable of performing PRW. Therefore, Claimant failed at step four. Id. As a result, the ALJ found Claimant was not disabled as defined by the Social Security Act. 42 U.S.C.A. § 1382(a) (2022); id. Claimant exhausted all administrative remedies and now appeals.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C.A. § 1382(a) and 42 U.S.C. § 405(g) (2022), limits this Court's judicial review of the Social Security Commissioner's denial of a period of disability and DIB. When examining a disability determination, a reviewing court is required to uphold the determination when the ALJ applied the correct legal standard *and* substantial evidence supports the ALJ's factual findings. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013) (emphasis added). A reviewing court may not re-weigh conflicting

3

evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [ALJ] if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653 (alteration and internal quotation marks omitted).

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to PRW and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). To evaluate a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his PRW; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof

4

at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861 (citing Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016)).

Additionally, if the claimant cannot show the disability is medically equivalent to one in the per se medical listing in step three, "the ALJ must assess the claimant's RFC before proceeding to step four, which is 'the most the claimant can do despite his physical and mental limitations that affect his ability to work.'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). The Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to 'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations.'
>
> Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996).
>
> Once the function-by-function analysis is complete, an ALJ may define the Claimant's RFC 'in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.' SSR 96–8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the Claimant's RFC, the ALJ must examine 'all of [the Claimant's] medically determinable impairments of which [the ALJ is] aware,' 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), 'including those not labeled severe at step two.' Mascio, 780 F.3d at 635. In addition, he must 'consider all [the Claimant's] symptoms, including pain, and the extent to which [his] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence,' 20 C.F.R. §§ 404.1529(a), 416.929(a). 'When the medical signs or laboratory findings show that [the Claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [his] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the Claimant's] symptoms so that [the ALJ] can determine how [his] symptoms limit [his] capacity for work.' 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Owens v. Berryhill, 2018 WL 3620496, at *2 (W.D.N.C. July. 30, 2018).

Proceeding to step four, the burden remains with the claimant to show they are unable to perform past work. Mascio, 780 F.3d at 635. If a claimant meets the required burden as to past work, the ALJ proceeds to step five. Lewis, 858 F.3d at 862.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d 176, 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

On appeal, Claimant asserts two assignments of error. Claimant first contends the ALJ improperly rejected medical opinions containing work-preclusive limitations, and next argues the ALJ did not evaluate the demands of Claimant's PRW as a composite job. For the following reasons, the Court finds Claimant's first assignment of error is without merit but agrees the ALJ failed to evaluate the demands of Claimant's PRW as a composite job.[1]

**A. The ALJ's Analysis of Dr. Rennard's Opinion**

Claimant's first assignment of error alleges the ALJ improperly rejected Dr. Rennard's findings as inconsistent with his own medical treatment records and the state agency medical

---

[1] The Court notes that for claims filed after March 27, 2017, the evaluation process for evidence of disability was modified. 82 F.R. 5844, 5869 (1–18–2017). Because this claim was filed on January 31, 2018, the new rules for assessing claims apply in this case. 20 C.F.R. § 404.1520c.

6

consultants' opinions. Claimant argues the rejection was improper because to reach this conclusion, the ALJ made a false presumption about the meaning of Dr. Rennard's treatment notes and illogically relied on other medical opinions he found unpersuasive. However, the Court disagrees.

To evaluate the persuasiveness of medical opinions and prior administrative medical findings, ALJs consider several factors. Of these factors, the ALJ is *required* to evaluate both the supportability and the consistency of each medical source, and to articulate each factor's persuasiveness. 20 C.F.R. § 416.920c(b)(2) (emphasis added). The supportability factor states: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[,] . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, the consistency factor establishes: "The more consistent a medical opinion . . . is with the evidence from other medical sources and non-medical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). The standard assessment for benefits also allows the ALJ to consider several additional factors, including relationship with claimant, length of treatment, frequency of examinations, purpose and extent of treatment, and specialization, among others. 20 C.F.R. § 416.920c(c).

If necessary, an ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8P at 7 (S.S.A. July 2, 1996). Further, the Fourth Circuit held that "'[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal

7

requirements to the record evidence.'" Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Additionally, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

Here, the ALJ adequately assessed the supportability and consistency of Dr. Rennard's opinion. In addressing the supportability factor, the ALJ found Dr. Rennard's opinion that Claimant could "walk only 150 feet without rest" contradicted his previous month's treatment notes, which stated Claimant was "exercising regularly and walking one mile most days." (Doc. No. 6–3, p. 38). Claimant argues this unreasonably and falsely presumes Claimant walked one mile at one time. (Doc. No. 7–1, pp. 6–7). When two reasonable minds could come to different conclusions, this Court defers to the ALJ's decision. Johnson, 434 F.3d at 653. In this case, it was reasonable for the ALJ to conclude that in the context of regular exercise, Dr. Rennard's earlier opinion meant Claimant walked one mile at one time, as opposed to one mile in separate walking sessions. Considering the ambiguity in the record, the Court finds the ALJ's conclusion was reasonable and therefore rejects Claimant's argument.

Additionally, the ALJ properly evaluated the consistency of Dr. Rennard's opinion. The ALJ found Dr. Rennard's opinion was inconsistent with Dr. Huffman-Zechman's and Dr. Pyle's opinions. Dr. Huffman-Zechman and Dr. Pyle determined Claimant could perform work at a medium exertion level and had less severe work-preclusive limitations. (Doc. No. 6–3, p. 38). Alternatively, Dr. Rennard found Claimant had extreme work-preclusive limitations—such as an inability to concentrate, deal with work stress, or lift more than ten pounds—and that he should be shifting positions, taking breaks, and reclining throughout the workday. Id.

The ALJ found Dr. Huffman-Zechman's and Dr. Pyle's opinions unpersuasive because they were inconsistent with Claimant's overall medical record and were not garnered from direct examination. Id. at 37–38. Conversely, the ALJ found Dr. Rennard's opinion unpersuasive because it was not supported by his own medical records, nor was it consistent with Dr. Huffman-Zechman's and Dr. Pyle's opinions. Id.

It is the ALJ's role to weigh the evidence and resolve conflicts; even if this Court disagrees with the ALJ's findings, those findings cannot be set aside if substantial evidence supports them. See Goforth v. Kijakazi, 2022 WL 567842, at *2 (W.D.N.C. Feb. 24, 2022). The ALJ found all three medical opinions unpersuasive because they each individually contradicted the record. Specifically, the ALJ reasoned that Dr. Rennard's findings of more severe work limitations directly conflicted with the two other medical opinions stating Claimant had less severe work limitations, and that the record did not support either conclusion. Thus, the ALJ's determination that two medical opinions were unpersuasive does not preclude those opinions from shedding light on a third medical opinion. Rather, the direct inconsistencies between the three opinions supports the ALJ's finding that Dr. Rennard's opinion was unpersuasive not just due to internal inconsistencies within Dr. Rennard's own records, but also because neither of the other two medical opinions supported Dr. Rennard's findings. The ALJ compared these opinions with the record and reasonably found the opinions unreliable and unpersuasive, because they represent two wholly opposite determinations regarding work limitations. Therefore, the ALJ's conclusion is supported by a thorough analysis and substantial evidence from the medical record.

Here, the ALJ properly analyzed Dr. Rennard's opinion for supportability amongst Dr. Rennard's own treatment records, and for consistency with other medical professionals. The ALJ

found Dr. Rennard's opinion lacked both. (Doc. No. 6–3, p. 37–38). Thus, although Claimant disagrees with the ALJ's evaluation of these opinions, this Court considers only whether the ALJ applied the proper legal standard, and whether the ALJ's decision is supported by substantial evidence. According to this deferential standard, this Court finds that Claimant's first assignment of error is without merit, and thus affirms the ALJ's evaluation of Dr. Rennard's opinion.

**B. The ALJ's Analysis of Claimant's PRW as a Composite Job**

Claimant's second assignment of error alleges the ALJ failed to correctly evaluate the demands of Claimant's PRW. Claimant contends the ALJ did not apply the proper legal standard because Claimant's PRW as both a project manager and estimator requires a separate composite job analysis for step four. For the foregoing reasons, the Court agrees and finds the ALJ improperly applied the legal standard.

To evaluate a claimant's PRW, the ALJ must: (1) determine the claimant's RFC, (2) make factual findings of the functional demands of claimant's PRW, and (3) determine whether claimant's RFC allows them to return to such work. 20 C.F.R. § 404.1520(e), (f); SSR 82–61. Further, if the PRW has "significant elements of two or more occupations and, as such, [has] no counterpart in the DOT", it may be considered a composite job. 2 SSR 82–61; see also Program Operations Manual System ("POMS") DI 25005.020B ("the claimant [may have performed a composite job] if it takes multiple DOT occupations to [explain] the main duties of the [claimant's] PRW. . ."). Further, the ALJ must "'find the plaintiff capable of performing the composite job only if he or she can perform all parts of the job'" Taylor v. Colvin, 2015 WL 4726906, at *4 (M.D.N.C. Aug. 10, 2015) (quoting Shealey v. Colvin, 2015 WL 467726, at *12-13 (D.S.C. Feb. 4, 2015)).

Moreover, the ALJ may not divide the demands of a composite job and find a claimant can perform the PRW if they can only perform the less demanding of the two jobs. See Shealey, 2015 WL 467726, at *13; see also Plumb v. Astrue, 2012 WL 768058 at *6 (D.S.C. Mar. 07, 2012) (remanding the case for the ALJ to determine whether it was a composite job after the VE provided multiple DOT titles for Claimant's PRW, but the ALJ found the claimant could perform the job without performing a composite job analysis.)

In a similar case, the VE classified the claimant as a "receptionist/general clerk." Carothers v. Saul, 2019 WL 4979978 at *3 (W.D.N.C. Oct. 08, 2019). In Carothers, the court found these two titles defined different jobs, had different DOT numbers, and required different exertional levels. Id. However, as here, the ALJ in Carothers analyzed the position as one job, not as a potential composite job, even though they were assigned two separate DOT titles. Id. As a result, the Carothers court reversed the Commissioner's decision and remanded the case. Id. On remand, the court required the ALJ to explain whether the position qualified as a composite job, to describe his reasoning for that finding, and if he found that the claimant's PRW was a composite job, to articulate whether the claimant could perform "all parts of the job as it was actually performed." Id. at *4 (quoting Taylor, 2015 WL 4726906, at *4).

In the present case, Claimant described his past jobs as "dual roles" (Doc. No. 6–3, p. 66), and the VE categorized Claimant's PRW as a combination of estimator and project manager. Id. at 75–76. Similar to Carothers, here the VE provided two different DOT titles, with two different sedentary exertion levels, and with SVPs of seven and eight, respectively. Id.

However, also like Carothers, the ALJ did not address the VE's description of the project manager and estimator jobs as "combo jobs" in his decision. Id. at 76. The ALJ found Claimant's

11

estimator job was not substantial gainful activity that qualifies as PRW and did not consider it further. Id. at 40. Thus, the ALJ determined only that Claimant "was capable of performing past relevant work as a project manager" because "[t]his work did not require the performance of work-related activities precluded by the claimant's [RFC]." Id. at 39. This conclusion, however, failed to address Claimant's and the VE's testimony that in his prior jobs, Claimant performed both project manager and estimator work. Id. Therefore, although Claimant's PRR comprised of two different job responsibilities with two distinct DOT positions, the ALJ failed to provide analysis regarding whether Claimant's PRW as a composite job. As such, the ALJ applied the improper standard in evaluating step four.

Accordingly, this Court finds a composite job analysis is required. Despite the VE providing two DOT titles for both estimator and project manager, the record demonstrates the ALJ did not assess whether Claimant's PRW was in fact a composite job. Without this determination, it is unclear if the ALJ needed to separately evaluate the Claimant's PRW according to the Social Security Administration's composite job guidelines. As such, the Court will remand so the ALJ can properly explain his findings concerning Claimant's PRW at step four of the sequential process.

On remand, the ALJ must fully assess whether this is a composite job and must articulate the factual findings and reasonings he relied on to do so. If the ALJ answers affirmatively, the ALJ must compare Claimant's RFC to the ability to complete every task of the job as it was actually performed to determine whether Claimant can return to his previous work.

Thus, the Court agrees with Claimant that the ALJ misapplied the legal standard by failing to analyze whether Claimant's PRW as an estimator and project manager is a composite job.

12

Case 1:22-cv-00012-FDW   Document 11   Filed 03/07/23   Page 12 of 13

Accordingly, the Court REMANDS this case for the ALJ to provide a proper analysis at step four of the five-step sequential process.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that for the reasons above, Claimant's Motion for Summary Judgment, (Doc. No. 14), is GRANTED; the Commissioner's Motion for Summary Judgment, (Doc. No. 16), is DENIED; and the case is REMANDED to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) for further administrative action consistent with this Opinion.

IT IS SO ORDERED.

Signed: March 7, 2023

Frank D. Whitney
United States District Judge